[No. F018910. Fifth Dist. Sept. 28, 1994.]

In re the Marriage of ELIZABETH JOY and CONRAD ANDRESEN.
ELIZABETH JOY ANDRESEN, Respondent, v.
CONRAD ANDRESEN, Appellant.

COUNSEL

Tritt & Tritt, James F. Tritt, Register & Cartier and G. June Register for Appellant.

Thomas J. Tusan for Respondent.

OPINION

**DIBIASO, J.**—Conrad Andresen (husband) appeals from an order denying his motions to set aside a 1987 default and vacate a 1991 default judgment in this marital dissolution action. We affirm.

### STATEMENT OF CASE AND FACTS

In May 1986, Elizabeth Andresen (wife) filed a standard form petition for dissolution of the parties' marriage. Part 5 of her petition was completed as follows:

"5. DECLARATION REGARDING COMMUNITY AND QUASI-COMMUNITY ASSETS AND OBLIGATIONS AS PRESENTLY KNOWN

"a. [ ] There are no such assets or obligations subject to disposition by the court in this proceeding.

"b. [ ] All such assets and obligations have been disposed of by written agreement.

"c. [x] All such assets and obligations are listed in the property declaration to be filed with this petition.

"d. [ ] All such assets and obligations are listed below."

In addition, the wife checked, among others, the box in part 7 of the petition which requested, as a component of the relief she desired, that "property rights be determined."

The top half of the first page of the standard form community property declaration, filed simultaneously with the wife's petition and incorporated in it by reference, contained in relevant part the following printed "Instructions": "When this form is attached to Petition or Response, values and your proposal regarding division need not be completed." In the body of the

property declaration, the wife listed 10 separate items which she claimed to be community assets. She also listed numerous creditors under the caption "debts." However, she did not attach any values to any of the items identified as community assets or community debts, nor did she request that the court divide the alleged community in any particular manner.

In February 1987, the wife filed a request to enter the husband's default because of his failure to timely respond to the petition.[1] The husband's default was entered on February 27, 1987; a judgment was subsequently entered on July 23, 1987.

On January 22, 1988, the husband moved to set aside the default and default judgment. After a hearing, the trial court denied the husband's motion but ordered that the judgment be vacated because it gave relief to the wife which went beyond the scope of her pleadings. Specifically, the default judgment had in part required the husband to execute a $50,000 note payable to the wife as reimbursement for separate monies she had contributed to the marriage. The trial court found that at no time before entry of judgment had the wife requested such relief in her pleadings.

In April 1989, a judgment of dissolution as to status only was entered. On February 27, 1991, orders on reserved issues were filed. In particular, these orders provided for an in-kind division between the parties of the alleged community assets and liabilities. The court further directed the husband to make an equalizing payment of $9,916.50 to the wife.

On August 27, 1991, the husband moved to set aside his 1987 default and the February 1991 orders on reserved issues, on the ground they were all void. After an October 1992 hearing, the trial court denied the motion.

DISCUSSION

I.

The husband contends the 1987 entry of his default and the 1991 default judgment are void because the wife's petition did not allege the specific kind and amount of relief she obtained by way of the judgment. In particular, he claims the wife's predefault pleadings failed to: (1) allege a value for the items of property the wife asserted were subject to the court's jurisdiction; (2) identify certain purported community assets which were ultimately awarded to the wife; and (3) request an equalizing payment from the husband.

---

[1] The summons and the pleadings were served upon the husband on May 23, 1986.

■ In general, when the defendant has defaulted, the trial court may not grant relief to the plaintiff in excess of that which is demanded in the complaint. (Code Civ. Proc., § 580.)[2] The primary purpose of section 580 is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them. (*Greenup* v. *Rodman* (1986) 42 Cal.3d 822, 826 [165 Cal.Rptr. 825, 612 P.2d 915].) A defendant who has been served with a lawsuit has the right to be fully apprised of the relief which the complainant is seeking from him or her in order to make an informed decision about whether to appear and defend. (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166 [276 Cal.Rptr. 290, 801 P.2d 1041, 5 A.L.R.5th 1156].)

■ In our estimation, *Marriage of Lippel* disposes of the husband's argument. In *Lippel*, the petitioner initiated dissolution proceedings by filing a standard form marital dissolution petition. In relevant part, she checked the box which requested that she be awarded custody of the parties' daughter but left blank the box relating to child support. (*In re Marriage of Lippel, supra,* 51 Cal.3d at p. 1163.) The respondent, though properly served, did not file a response and his default was duly entered. The trial court subsequently entered a default judgment which gave the petitioner custody of the child and ordered the respondent to pay $100 a month as child support.

The Supreme Court held the child support award violated the plain language of section 580, since the petition did not request such relief. (*In re Marriage of Lippel, supra,* 51 Cal.3d at p. 1167.) The court explained:

"The [Family Law Act (Civ. Code, § 4000 et seq.)] abolished the traditional complaint, which often contained the standard prayer for general relief that we found in *Cohen* (*supra,* 150 Cal. 99) to be sufficient notice of a possible support award. The Act empowered and directed the Judicial Council to create, as a substitute for the traditional complaint, a mandatory printed standard form petition. (Civ. Code, § 4503.)

"Thus, in 1970, the Judicial Council promulgated rule 1281 of the California Rules of Court, which established a mandatory standard form dissolution petition. This standard form petition, which, with minor modifications

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

The precise language of section 580 is: "[t]he relief granted to the plaintiff, if there be no answer, cannot exceed that which he or she shall have demanded in his or her complaint or in the statement required by Section 425.11; but in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue."

Section 580 applies to defaults in marital dissolution actions. (*Buchanan* v. *Buchanan* (1952) 114 Cal.App.2d 120, 121 [249 P.2d 577].)

over the years, remains in use today, requires a petitioner to set forth certain statistical information in spaces provided, and to check boxes, from a series provided, which indicate the remedy or relief requested (e.g., legal separation, dissolution, or nullity of the marriage) and the specific relief being sought (e.g., property division, spousal support, child custody, child support or attorney fees).

"Coupled with the requirement that the respondent be served with a copy of the petition (Civ. Code, § 4503), the manner in which these boxes are checked, or not checked, informs and puts the respondent on notice of what specific relief the petitioner is, or is not seeking." (*In re Marriage of Lippel*, *supra*, 51 Cal.3d at pp. 1169-1170, italics added.)

As we read *Lippel*, due process is satisfied and sufficient notice is given for section 580 purposes in marital dissolution actions by the petitioner's act of checking the boxes and inserting the information called for on the standard form dissolution petition which correspond or relate to the allegations made and the relief sought by the petitioner. The opinion does not suggest that any greater specificity is required. Although we acknowledge the Supreme Court had no need to address the point, we find nothing in the language of *Lippel* which compels a conclusion that the amount of the relief requested, as contrasted with the type of the relief requested, must be inserted in the relevant form if the form does not itself expressly demand such data.[3]

In this case, the wife requested the parties' property rights be determined because she checked the appropriate box on the petition. She also selected, again by checking a box, one of the four alternatives in part 5 of the petition relating to the marital assets and liabilities. In accord with the terms of this choice, the wife attached to her petition a property declaration which listed certain assets and liabilities. Consistent with the "Instructions" in the declaration form, the wife did not assign any values to the described property or debts, or propose that they be divided in any particular manner.

Therefore, because the wife properly and fully completed the petition and its necessary attachments to the extent of the relief requested on the face of those documents, the husband was given adequate notice that the wife sought a division of the property and liabilities identified in the wife's papers. (*In re Marriage of Lippel*, *supra*, 51 Cal.3d at p. 1169-1170.) If he

---

[3]Section 580 "does not distinguish between the type and the amount of relief sought." (*Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d, 489, 493 [165 Cal.Rptr. 825, 612 P.2d 915].)

desired to be heard on the subject of the valuation and division of the listed items, he should have appeared.[4]

This result is consistent with pertinent fundamental family law principles. Except under limited circumstances which are irrelevant here, the trial court, in its judgment of dissolution or at a later time if it expressly reserves jurisdiction to do so, *must* value and divide the community estate of the parties equally. (Former Civ. Code, § 4800, subd. (a).[5]) This task constitutes a nondelegable judicial function (*In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 84 [16 Cal.Rptr.2d 575]) which must be based upon substantial evidence (*In re Marriage of Micalizio* (1988) 199 Cal.App.3d 662, 673 [245 Cal.Rptr. 673]). If the court decides the evidence produced by one or more of the parties is in some manner insufficient to enable the court to properly value an item of property in issue, it may appoint an independent appraiser to offer expert testimony on the subject. (Evid. Code, § 730; *In re Marriage of Drivon* (1972) 28 Cal.App.3d 896, 898 [105 Cal.Rptr. 124].) In addition, the family law court possesses broad discretion to determine the manner in which community property is awarded in order to accomplish an equal allocation. (*In re Marriage of Cream, supra,* 13 Cal.App.4th at p. 88.) If the circumstances warrant, the court may award one or more items of the property to one party and require that party to make an equalizing payment to the other. (*Ibid.*)

Thus, when a petitioner asks the court to determine the rights of the parties as to specified property, the respondent is necessarily on notice that the court will undertake to assess and then divide the alleged community equally between the parties. If the respondent is willing to rely upon the trial court's independent obligation to accurately value and fairly allocate the community estate as a protection against any attempt by the petitioner to overreach, the respondent need not file a response to the petition. If the respondent disagrees with any allegation of the petition or is concerned about how the court will value an asset or liability identified in the petition or divide the whole of the property placed in issue under the petition, then he or she must file a response to preserve the right to appear before the court and present evidence and argument on such matters.

The husband in this case essentially ignores *Lippel*. Rather, he relies on *Jackson* v. *Bank of America* (1986) 188 Cal.App.3d 375 [233 Cal.Rptr. 162],

---

[4]We find unmeritorious the husband's claim that certain of the assets awarded to the wife in the 1991 orders were not identified in the community property declaration. Each of the items complained of by the husband is adequately described in that attachment.

[5]Because the underlying proceedings were conducted before the effective date of the new Family Code, we cite to the former Civil Code sections pertaining to family law matters.

*Petty* v. *Manpower, Inc.* (1979) 94 Cal.App.3d 794 [156 Cal.Rptr. 622] and *Fehlhaber* v. *Fehlhaber* (5th Cir. 1982) 681 F.2d 1015. We find none controlling.

*Jackson* is factually distinct. The plaintiff in *Jackson* sought damages against a bank on a variety of theories; however, he failed to allege in his predefault pleadings any conduct by the bank which caused him to lose the sum he claimed as damages. (*Jackson* v. *Bank of America, supra,* 188 Cal.App.3d at p. 388.) In passing, the *Jackson* court observed: " 'A default admits *the material allegations of the complaint,* and no more . . . the relief given to the plaintiff cannot exceed that which the law awards as *the legal conclusion from the facts alleged* . . . .' " (*Id.* at p. 387, italics in original.)

The appellate court decided that section 580 precluded the plaintiff from proving that the Bank's conduct caused him to suffer damages. (*Jackson* v. *Bank of America, supra,* 188 Cal.App.3d at pp. 387-388.) Nowhere in the opinion did the court address the question whether a marital dissolution petition must set forth amounts or valuations of identified community property or propose its division.

*Petty* v. *Manpower, Inc., supra,* is both factually and legally distinguishable. The complaint in *Petty* was for money damages for personal injury. By express statutory command, such a complaint *may not* state the dollar amount of such damages (§ 425.10), but the plaintiff must give notice to the defendant of the amount of special and general compensation sought before a default may be taken. (§ 425.11.) While the plaintiff in *Petty* complied with section 425.10, he did not give the requisite notice under section 425.11. (*Petty, supra,* 94 Cal.App.3d 794, 797-798.) Reading these statutory provisions together with section 580, the appellate court ruled the trial court had exceeded its jurisdiction by entering a default judgment; the defendant was denied due process for lack of notice of the amount in controversy. (94 Cal.App.3d at p. 798.) Unlike *Petty,* the present action was not one for money damages for personal injury. In addition, there is no statutory requirement in marital dissolution actions akin to sections 425.10 and 425.11.[6]

Finally, to the extent *Fehlhaber* v. *Fehlhaber, supra,* 681 F.2d 1015, is inconsistent with the result we reach, it has been displaced by *Lippel.* The plaintiff in *Fehlhaber* had been the petitioner in an action for legal separation

[6]We note that in dissolution proceedings commenced on or after January 1, 1993, Civil Code section 4800.10, subdivision (i) requires a preliminary declaration of disclosure identifying all assets and liabilities regardless of their characterization. (See also Fam. Code, § 2104.) To date, no case law has tied either of these statutes to section 580. Since the instant dissolution action commenced before January 1, 1993, former Civil Code section 4800.10 and Family Code section 2104 are beside the point here.

filed in a California court; she requested in part a determination of property rights. Her petition alleged the community property was worth $15 million. The respondent in that action, who was the defendant in *Fehlhaber*, contested California's jurisdiction and did not respond; his default was subsequently entered. (681 F.2d at p. 1019.) The California court eventually set the value of the community property at nearly $20 million and awarded it all to the defendant, with an equalizing payment of almost $10 million to the plaintiff.

When the plaintiff filed an action in a federal district court to enforce the California judgment, the defendant challenged the validity of the judgment on a number of grounds. (*Fehlhaber* v. *Fehlhaber, supra,* 681 F.2d at p. 1019.) The district court found in favor of the wife. On appeal, the defendant in relevant part argued the California family law court had no jurisdiction to award the cash payment because: (1) no notice was given in the petition that a cash offset was requested;[7] and (2) it exceeded the amount of relief sought by the petition. (*Fehlhaber, supra,* 681 F.2d at pp. 1024-1025.)

On the first issue, the federal appeals court held that the equalizing payment came within the defendant's prayer for relief in the California proceeding because her request that " 'property rights be determined as provided by law' " put the plaintiff on notice he was potentially subject to a monetary judgment. (*Fehlhaber* v. *Fehlhaber, supra,* 681 F.2d at p. 1024.) The court felt that the discretion possessed by a California family law court under Civil Code section 4800 was broad enough to permit an award of an asset to one spouse and a cash equalization to the other. (681 F.2d at pp.

---

[7]The husband in the present case makes an identical argument, citing the same opinion upon which the defendant in *Fehlhaber* relied, *Wilkinson* v. *Wilkinson* (1970) 12 Cal.App.3d 1164 [91 Cal.Rptr. 372]. The husband here neglects the fact that *Fehlhaber* found *Wilkinson* distinguishable.

The petitioner in *Wilkinson* specifically alleged that the community property, consisting of household furnishings, be awarded to her. In a default judgment, the court gave the property to the respondent and ordered him to pay the petitioner $500 for her share. (*Wilkinson* v. *Wilkinson, supra,* 12 Cal.App.3d at p. 1166.) Pointing out that the prayer demanded an in-kind award of the property and not a sum in lieu of the petitioner's interest, the appellate court found the relief granted exceeded that which the petitioner had sought in her complaint. It reasoned the respondent had a right under section 580 to assume the trial court at worst would do no more than award all of the household furnishings to the petitioner. (*Wilkinson, supra,* 12 Cal.App.3d at pp. 1166-1167.)

Here, the wife did not ask first for one thing and then obtain an opposite disposition. Instead, she requested in her petition that the court determine property rights. The court's order was consistent with the wife's prayer. It partitioned the parties' community assets and debts as their sole and separate property or obligations. Since, as previously stated, the law mandates that the court divide the community estate equally (former Civ. Code, § 4800), when, as here, the alleged community property consists primarily of hard assets it is likely the court will have to provide for an equalizing payment.

1023-1024, citing among other cases, *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557 [63 Cal.Rptr. 13, 432 P.2d 709].)

However, the appellate court also held the amount of the California judgment exceeded the allegations of the marital dissolution petition and therefore violated section 580. *Fehlhaber* reasoned section 580 was designed to ensure fundamental fairness through notice to the defaulting party of the *amount* of the judgment that could be taken against him or her, in addition to the kind of relief. The request in the petition that " 'property rights be determined' " did not meet California's requirement that specific notice be given of the amount of the cash judgment to which the plaintiff was subject. (*Fehlhaber* v. *Fehlhaber, supra,* 681 F.2d at p. 1025.) Therefore, because the petition alleged that the value of the community property was $15 million, the judgment was "open to collateral attack" to the extent it awarded the plaintiff more than $7.5 million; it could not be enforced beyond that amount. (*Id.* at pp. 1025-1026.)

*Fehlhaber* constitutes an attempt by a federal court to anticipate California law with respect to the application of section 580 in a marital dissolution action. As such, *Fehlhaber* has been superseded by *Marriage of Lippel* insofar as the opinion in the federal case is inconsistent with this later decision by the California Supreme Court.

 For all the reasons expressed, we conclude the judgment is not void under section 580, and the trial court did not err in denying the husband's motion to vacate it. For the same reasons, the trial court did not err in denying the husband's motion to set aside the entry of his default.

## II.

 Alternatively, the husband maintains the entry of his default is void because the wife interjected a new issue—the husband's alleged agreement to pay her $50,000—into the original default judgment. Relying upon *Jackson* v. *Bank of America, supra,* 188 Cal.App.3d 375, the husband argues that the reference in the 1987 default judgment to the previously unalleged $50,000 obligation constituted a de facto amendment of the petition which opened the default and entitled him to service of an amended pleading. According to the husband, the trial court was "without jurisdiction to enter any orders against [the husband] since the de facto amendment."[8]

We decline to upset the trial court's 1992 order denying the husband's motion to set aside the default. First, the default is not void. The husband

---

[8]The husband's assertion the default was void is understandable, given his considerable delay between 1987 and 1991 in challenging the action taken against him. Where the basis of a claim for relief from a default is not based upon voidness, there remains only mistake,

makes no claim, and the record would not support a claim, that the trial court lacked personal jurisdiction over him or subject matter jurisdiction over the cause at the time the default was entered. Further, there is no showing that the statutory conditions authorizing entry of the default were not satisfied. (See *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1268 [284 Cal.Rptr. 18]; *Estate of Gardiner* (1941) 45 Cal.App.2d 559, 562-563 [114 P.2d 643].) Because the trial court thus had the jurisdictional power to enter the husband's default as and when it did, the default was not void at the time it was entered. (*Adoption of Matthew B., supra,* 232 Cal.App.3d at p. 1268.) Because the default was valid *on the face of the record at the time of its entry,* it is not void now. (*Adoption of Matthew B., supra,* 232 Cal.App.3d at p. 1268; see also *Plotitsa* v. *Superior Court* (1983) 140 Cal.App.3d 755, 761 [189 Cal.Rptr. 769].)

Second, we will not follow *Jackson* v. *Bank of America, supra,* 188 Cal.App.3d 375; it is at odds with the opinions of the California Supreme Court in *Becker* v. *S.P.V. Construction Co., supra,* 27 Cal.3d 489 and *In re Marriage of Lippel, supra,* 51 Cal.3d 1160. In *Jackson,* the plaintiff filed suit to prevent the bank from selling bonds which had been pledged as security for a loan. The complaint asserted in conclusionary terms that the plaintiff had been damaged in the sum of $43,016.64. The bank did not timely respond to the complaint. More than six months later, the plaintiff sought a default judgment against the bank. At the hearing for default judgment, the plaintiff introduced evidence that the bank's actions caused him to suffer certain losses, computed by the plaintiff to exceed $95,000. The trial court entered a default judgment against the bank for $43,016.64, the amount stated in the complaint, as compensatory damages and for an additional amount as punitive damages.

On the bank's appeal, the appellate court reversed. It determined the plaintiff's evidence at the default hearing exceeded the allegations of the complaint because the pleading did not describe any conduct on the part of the bank which caused the monetary loss purportedly sustained by the plaintiff. The court then held that the plaintiff's introduction of evidence of the bank's actions effected a de facto amendment of the complaint, thereby

---

inadvertence, surprise or excusable neglect under section 473 as grounds for setting aside the default. (§ 473.) However, such a motion must be made "within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order or proceeding was taken." (*Ibid.*) Since default was entered in 1987, the husband's 1991 motion was obviously untimely under the provisions of section 473.

opening up the bank's prior default and entitling it to a new opportunity to plead. (*Jackson* v. *Bank of America, supra,* 188 Cal.App.3d at p. 390.)[9]

In *Becker,* the specific amount of damages alleged in the complaint was $20,000. (*Becker* v. *S.P.V. Construction Co., supra,* 27 Cal.3d at p. 495.) There was no prayer or request for attorney fees. The trial court, after a hearing and review of certain documentary evidence, entered a default judgment against the nonappearing defendants in the amount of $26,457.50 as compensatory damages and $2,500 as attorney fees. More than eight months later the defendants moved to set aside the judgment on the ground it was in excess of the trial court's jurisdiction under section 580. The motion was granted. (27 Cal.3d at p. 492.) On the plaintiff's appeal, the Supreme Court held the trial court had exceeded its jurisdiction by awarding the plaintiff compensatory damages above the sum of $20,000 and by awarding attorney fees to plaintiff. (*Id.* at pp. 494-495.)

However, the Supreme Court reversed the trial court's order vacating the entire judgment and remanded the matter with directions to the trial court to modify the judgment by striking the award of damages above the sum of $20,000 as well as the award of attorney fees. The court held that a trial court has the power under section 580 to modify a default judgment by deleting the void portion, whether the attack on the judgment is made directly or collaterally. (*Becker* v. *S.P.V. Construction Co., supra,* 27 Cal.3d at p. 495.)

In *Lippel,* to the extent the default judgment granted custody of the minor to the petitioner, it was consistent with the allegations of the petition. However, even though the box in the petition referring to child support had not been checked, the default judgment included an order which awarded an amount for child support to the petitioner. (*In re Marriage of Lippel, supra,* 51 Cal.3d at p. 1164.) The *Lippel* court found the award of child support constituted relief beyond that demanded by the petition and therefore violated section 580. Nonetheless, the Supreme Court did not require that the entire judgment be vacated and the respondent be allowed to answer the petition. Instead, the court directed the trial court to strike only the portion of the judgment which ordered the respondent to pay child support.[10] The balance of the judgment was left to stand as entered. (51 Cal.3d at p. 1173.)

In part, the *Lippel* court summarized its prior precedents, including *Becker,* as establishing "that section 580 is to be interpreted . . . to deprive

---

[9]Here, the husband's argument assumes that because the 1987 default judgment included a requirement that he execute the $50,000 note, the wife must have introduced evidence relating to the subject at the default hearing.

[10]The court also directed the trial court to vacate its postjudgment order assigning the respondent's wages in order to satisfy an alleged failure on the part of the respondent to pay the support ordered in the judgment.

a trial court of jurisdiction to enter a judgment against a defaulting defendant which awards greater relief than that sought in the plaintiff's complaint [Citation]." (*In re Marriage of Lippel, supra*, 51 Cal.3d at p. 1167.) Read in the context of the entire opinion, we do not construe this statement to mean that a judgment which contains an unauthorized provision is wholly void. Had the court intended to announce such a rule, the trial court would not have been instructed to eliminate only the offending child support order. Rather, we view the court's statement as expressing the principle that the judgment exceeds the trial court's jurisdiction solely to the extent the relief awarded by the judgment surpasses the allegations of the complaint.[11]

We cannot square *Jackson* with the dispositions in *Becker* and *Lippel*. In *Becker*, the plaintiff introduced evidence at the default prove-up hearing which clearly eclipsed the allegations of the complaint both as to the nature of the relief (attorney fees) and the amount of the relief (compensatory damages and attorney fees) sought. Applying *Jackson* to the *Becker* circumstances would require that the judgment in *Becker* be vacated in its entirety and an amended complaint, consistent with the evidence, be prepared and served upon the defendants, a result the *Becker* court did not order. The *Lippel* opinion does not disclose whether the petitioner introduced evidence at the default hearing concerning the propriety or the reasonable amount of an award of child support; even if no such evidence was introduced, we would not find this a sufficient reason to follow *Jackson*. The omission of any mention in *Lippel* of this particular fact suggests the *Lippel* court did not consider it decisive. In addition, *Lippel* cited *Becker* with approval, and, as we have noted, evidence beyond the complaint was introduced at the default hearing involved in *Becker*. Assessed against *Becker* and *Lippel*, *Jackson* simply goes too far.

In the case before us, the husband's default was properly entered. Consequently, the wife had the right to have the relief demanded in her complaint. (§ 580.) The void portion of the default judgment which gave the wife greater relief, in both nature and amount, than she had requested in her complaint was subject to being set aside at any time. (*National Diversified Services, Inc.* v. *Bernstein, supra*, 168 Cal.App.3d at p. 414.) The trial court's subsequent vacation of the default judgment, upon the husband's motion, afforded the husband a more complete remedy than he was entitled to have. We see no reason why the wife should be denied the benefit of the relief, embodied in the 1991 orders, that the husband long ago consented to accept.

---

[11]Several other opinions, in a variety of contexts, arrive at the same result as those in *Becker* and *Lippel*. (See, e.g., *Greenup* v. *Rodman, supra*, 42 Cal.3d 822, 829-830; *National Diversified Services, Inc.*, v. *Bernstein* (1985) 168 Cal.App.3d 410, 419 [214 Cal.Rptr. 113]; and *Thorson* v. *Western Development Corp.* (1967) 251 Cal.App.2d 206, 215 [59 Cal.Rptr. 299].)

## Disposition

The judgment is affirmed. Respondent is awarded costs on appeal.

Ardaiz, P. J., and Stone (W. A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied January 18, 1995.